Filed 10/20/22; Certified for Publication 11/16/22 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| NATASHA THOMPSON, | B307969 & B311569 |
| Plaintiff and Appellant, | Los Angeles County Super. Ct. No. BC687511 |
| v. | |
| COUNTY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Mark A. Young, Judge. Affirmed.

The Law Office of Cliff Dean Schneider and Cliff Dean Schneider for Plaintiff and Appellant.

David Weiss Law, David J. Weiss, Nicholas A. Weiss, and Skyla L. Gordon for Defendants and Respondents.

——————————

Natasha Thompson sued the County of Los Angeles and other county defendants (the County) for removing her son, J.G., from her care.

The County demurred. The trial court sustained the demurrer without leave to amend. It found the County was immune from suit and Thompson failed to allege a mandatory duty sufficient to overcome immunity. Thompson appealed (appellate case No. B307969). She says she alleged a mandatory duty and, in the alternative, the court should have allowed her to amend her complaint.

The court later denied Thompson's motion to tax expert witness fees. Thompson appealed this ruling (appellate case No. B311569).

We consolidated the two appeals for oral argument and opinion. We affirm.

I

J.G. is the son of Natasha Thompson and Delmas Griffin. On August 31, 2016, when he was four years old, J.G. fell at his school's playground. The fall fractured his arm. J.G. has a developmental delay and was nonverbal.

Two days after the fall, J.G.'s parents took him to a doctor. The doctor did not diagnose the fracture as abuse by J.G.'s parents.

The principal at J.G.'s school called the Los Angeles Police Department and reported physical abuse of J.G. by an unknown party.

The Los Angeles County Department of Children and Family Services investigated J.G.'s injury. A Department social worker spoke to police officers, J.G.'s school principal, Thompson, Griffin, and J.G. The social worker reported that when she asked

2

J.G. who injured him, J.G. pointed to Griffin, J.G.'s father. The social worker concluded J.G. was at risk of harm and took him into protective custody on September 15, 2016. The Department filed a Welfare and Institutions Code section 300 petition.

A juvenile court found there was prima facie evidence J.G. was a child described in Welfare and Institutions Code section 300 and detention was appropriate.

On December 24, 2016, a forensic child abuse expert reported J.G.'s injury could have been an accident.

On January 5, 2017, the juvenile court dismissed the petition and released J.G. to his parents.

On December 19, 2017, Thompson and Griffin sued the County in Los Angeles Superior Court. Only Thompson has appealed. For readability, we refer to the trial court plaintiffs as "Thompson."

On February 16, 2018, Thompson filed a first amended complaint. This complaint is not in our record. It apparently contained state and federal claims.

The County removed the case to federal court, where Thompson filed a second amended complaint. On March 11, 2019, the federal court granted motions for summary judgment in the County's favor for Thompson's federal claims and remanded the remaining claims to state court.

On October 8, 2019, Thompson filed another second amended complaint in state court alleging two causes of action: negligence per se and intentional infliction of emotional distress.

The County demurred.

The court sustained the demurrer and dismissed Thompson's claims with prejudice. The court concluded Thompson did not allege a mandatory duty.

3

After the court sustained the demurrer, the County filed a memorandum of costs seeking $51,997.52.  This figure included $37,315 in expert fees.  The form the County used specified the expert fees were "*per Code of Civil Procedure section 998*."  That section permits a defendant who makes a settlement offer that the plaintiff does not accept to recover costs for expert witnesses in certain circumstances.  (*Id.*, subd. (c)(1).)

Thompson moved to tax costs.  As to the expert fees, her motion said the fees should not be taxed for several reasons.  Thompson did not mention Code of Civil Procedure section 998 in the motion.

The County opposed the motion and argued it was entitled to fees under Code of Civil Procedure section 998 because it had made a settlement offer in federal court.  In reply, Thompson argued for the first time that this section did not apply.

The trial court denied the motion to tax expert fees.  The court gave two grounds for its decision.  First, Thompson gave no legal authority to support her argument about why Code of Civil Procedure section 998 did not apply.  Second, Thompson waived the argument by failing to raise it in her initial motion.

Thompson appealed the court's rulings on the demurrer and the motion to tax costs.

II

A

The trial court correctly sustained the demurrer.  Because Thompson attacks the trial court's finding about the mandatory duty exception to immunity, only, we limit our discussion to this issue.  The trial court properly found Thompson did not allege a breach of a mandatory duty sufficient to overcome immunity.

4

Although Thompson does not cite this provision in her appellate briefing, her mandatory duty argument seems to be about Government Code section 815.6, which says, "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

Liability under Government Code section 815.6 may only be based on an enactment that creates an obligatory duty and may not be based on a discretionary or permissive duty. (*Haggis v. City of Los Angeles* (2000) 22 Cal.4th 490, 498.) It is not enough that an enactment requires a public entity or officer to perform a function if the function itself involves the exercise of discretion. (*Ibid.*)

Thompson cites a provision that does not create a mandatory duty. The provision comes from the state's Child Welfare Services Manual of Policies and Procedure. The provision requires social workers to make "necessary collateral contacts" with people "having knowledge of the condition" of children subject to allegations. (Cal. Dept. of Social Services, Child Welfare Services Manual of Policies and Procedures (eff. April 8, 1994) p. 62, Div. 31, former Ch. 31-125.222 [eff. Oct. 1, 2016, amended Ch. 31-125.22 substantially includes the same language].) Thompson says the County violated its duty to make necessary collateral contacts by not speaking to J.G.'s doctor.

We assume without deciding that the collateral contacts provision Thompson cites is a regulation with legal force. The court in *Scott v. County of Los Angeles* (1994) 27 Cal.App.4th 125

5

(*Scott*) found that provisions in the Manual adopted pursuant to Welfare and Institutions Code section 16501 and the Administrative Procedures Act have the force of law. (*Scott*, at p. 145.) Thompson cites *Scott* without explaining whether the provision at issue in her case was adopted pursuant to these laws. Because Thompson's argument fails for other reasons, we assume the provision she cites has legal force.

Thompson's argument about the provision fails, however, because the provision is discretionary. The County must exercise discretion to determine what constitutes a "necessary" collateral contact. In other words, the County must make contacts, generally, but the decision to make contact with a particular person is discretionary. This is logical because the universe of people with "knowledge" of a child's "condition" is vast. It could include a child's parents, siblings, grandparents, aunts, uncles, cousins, school bus drivers, teachers, principals, school nurses, classmates, friends, friends' parents, neighbors, police officers, doctors, and dentists, to name a few. When the County decides whom to deem a necessary contact, it balances various interests: child safety, family preservation, and limited time and resources. This balancing requires the County to exercise discretion. The provision does not create a mandatory duty to contact particular individuals.

Thompson refers to a second provision, but she does not tell us what that regulation says, nor does she say how it creates a mandatory duty. She has therefore waived contentions about it. (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

Thompson cites *Scott*, *supra*, 27 Cal.App.4th 125, but that case does not support her position. The rule at issue in *Scott*

6

required social workers to make monthly face-to-face contact with children and foster parents.  (*Id.* at p. 138.)  A social worker could make less frequent visits under certain circumstances, but only if a supervisor approved this in writing.  Despite reports of abuse while the child was placed with the foster parent in *Scott*, the social worker did not make monthly visits, and a supervisor had not approved less frequent visits.  The court held that monthly visitation was a mandatory requirement.  (*Id.* at pp. 139, 142.)  *Scott* therefore involved a specific obligation with no room to exercise discretion.  In contrast, as we explained, the provision Thompson cites does not impose a clear and unequivocal mandatory duty because determining who is a necessary contact is inherently subjective and requires the exercise of discretion.

The trial court did not abuse its discretion by denying Thompson leave to amend.  Thompson has the burden to establish a reasonable possibility she could amend the complaint to state a claim.  (See *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126.)  She says the determination of whether the collateral contacts provision created a mandatory duty is a factual issue and she "can likely identify more" collateral contacts.  As we explained, the collateral contacts provision gives social workers discretion to determine which contacts are necessary.  As a matter of law, it does not create a mandatory duty.  Thompson's assertion that she can identify other collateral contacts is vague and does not establish a reasonable possibility she can amend the complaint to state a claim.  Furthermore, the collateral contact provision would remain discretionary even if Thompson were to name other contacts.  The trial court properly exercised its discretion.

7

B

Turning to costs, Thompson waived her argument by failing to raise it in her motion to tax costs. On appeal, she challenges the expert witness fees, only. The trial court relied on waiver as one ground for its ruling denying Thompson's motion to tax these fees. The court's ruling was proper because the County requested expert witness fees pursuant to Code of Civil Procedure section 998 and Thompson did not address this section in her motion. On appeal, Thompson ignored the waiver ground in her opening brief and she filed no reply brief. We affirm on the ground of waiver. Because Thompson offers no challenge to this ground, we need not and do not address her other arguments about expert witness fees.

**DISPOSITION**

The judgment is affirmed. Costs are awarded to the Respondents.

WILEY, J.

We concur:

GRIMES, Acting P. J.

HARUTUNIAN, J.*

---

* Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8

Filed 11/16/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| NATASHA THOMPSON,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>COUNTY OF LOS ANGELES et al.,<br><br>    Defendants and Respondents. | B307969 & B311569<br><br>Los Angeles County<br>Super. Ct. No. BC687511<br><br>**ORDER CERTIFYING OPINION FOR PUBLICATION**<br><br>**[No change in judgment]** |

THE COURT:

        The opinion in the above-entitled matter filed on October 20, 2022, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

        There is no change in the judgment.

_____

GRIMES, Acting P. J.        WILEY, J.        HARUTUNIAN, J.*

_____

* Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.